Good morning, may it please the court, I'm Jeffrey Harris on behalf of Plaintiff Appellant Don Higginson. Under the California Voting Rights Act, race and race alone is the determinative consideration in assessing whether a municipality may continue to use at-large election systems. The CVRA requires California cities to abandon at-large election systems and move to bi-district maps solely based on the existence of racially polarized voting. That is when... Can you be... Aren't there protected groups that are not based on race under the act? Yes. So it's not... So the act does not require movement from single district to multi-district solely on the basis of race. It can require it on other bases too, can it not? That's correct, but I don't think there's any allegation with respect to Poway or most of the other... Okay. But you just made a statement that isn't true. The act doesn't require redistricting solely on the basis of race. The act may allow race as one of the bases for requiring redistricting, but there are many others. Yes, your honor. But of course, if there is racially polarized voting, which means simply voters of different races tend to prefer different candidates, that is the trigger that says you may now no longer use your at-large system. So here's the question, and this may have been resolved by our prior amendment, but it troubles me. No one ordered Poway to redistrict. Private lawyers sent them a letter saying, I'm thinking of suing you. And they decided quite sensibly, I think, why go through the trouble, we'll redistrict. How does that translate to your ability to challenge the act? This your honor is precisely the issue that's already been resolved and is now law of the case. A year and a half ago, many of us... I know it's law of the case, but it's the same case. So we have the ability to change the law of the case. Just tell me why it was right. Yes, it was right, your honor, because the whole CVRA scheme, including the fee shifting provision, including the safe harbor, it is designed to put a gun at the city and say, once these things, once you even get an allegation, you have to switch or else there are going to be serious consequences, which could include millions of dollars of fees. And so I think, as we explained in our brief, in city after city after city, the ones that are virtually impossible to refute, they end up with seven figure attorney's fees awards against them. And so this whole mechanism, especially, again, the fee shifting and the safe harbor are designed to achieve one thing only, which is to, as soon as there's an allegation, you switch and get rid of your outlars. So we briefed this extensively in our... I understand you briefed it. So my next question is, why is your client worse off under this system?  And to be clear, this was also resolved, but... I understand. I understand. You've got a MemDisc out of the last panel that said you could bring this. Now it's in front of us and the whole case is in front of us. Nobody binds me with the prior MemDisc. How is your client worse off? Yes, Your Honor. He used to be able to vote for four city council members, and now he is in a district that was drawn solely for racial reasons to address racially polarized voting, and he can now only vote for one. So he doesn't... Is his district racially gerrymandered? Yes, absolutely. Why? It is because that district would not even exist if not for the trigger in the CVRA of racially polarized voting. That's your only contention of why it's racially gerrymandered? Yes. We don't say if the line were here instead of here. So... Right. If you were just looking at this district, let's assume they had formed four districts, and you were just looking at the district, you would not have any contention it was racially gerrymandered. Correct. Just as in Bethune Hill, where Section 2A of Bethune Hill raised the exact argument Your Honor just alluded to. The state said you cannot show a gerrymandering claim unless you show misshapen or... That's a statutory claim. No, Bethune Hill was an equal protection claim. Are you making a racial gerrymandering claim here? We're making an equal protection claim challenging the choice of the district. So the label, I think, is less important. But the label is kind of important to me. I just want to know, are you making a racial... Because you refer to racial gerrymandering throughout, and I'm just trying to figure it out. And I wanted to ask you directly, are you making a racial gerrymandering claim here? We are making an equal protection claim based on racial predominance. And so we are drawing on the same principles in cases like Shaw and Miller, and those cases have typically... But you're relying on the same principles. And so let me just ask, can you point to any case that has held that premising a statute's on the existence of this racially polarized voting is a racial classification? I think cases like Bartlett, which talk about infusing race into every decision, which the Supreme Court said would have serious constitutional concerns. And I want to take a step back. The reason the CVRA targets racially polarized voting, the theory is that if racially polarized voting is happening, if voters are divided up into districts, it gives protected classes more influence. And so that is both a racial purpose and a racial effect. And I think the interveners and amicus Morgan and Kuser are quite candid about this. They say the purpose of the CVRA is to increase the influence of protected classes. And now, maybe that's good policy, maybe it isn't, but it's a racial classification that has to meet strict scrutiny. So I'm going to pose the California statute for what it was intended to do. California statute says, I have a town in which the minority population, let's make it all Hispanic for purposes of discussion, is 49%. The Anglo population is 51%. They have an at-large voting system. And that means that the city council is always all Anglo. California says, as a matter of policy, we don't think that's a great thing. So we don't want to have single district voting systems into that. We want a system that don't racially gerrymander the districts. Once you go to multi-districts, just do them on geographic basis. We want to go to a system where that 49% of the population has more of an opportunity to elect people on the council. Your position is that's per se unconstitutional. A couple questions there. Let me sort of unpack those. California, as a matter of good government for race-neutral reasons, could have decided just to ban at-large districts altogether. But what it can't do, the greater doesn't include the lesser here. Just because it could have done that, it can't... Okay, that's my question. Why not? Why can't California say, at-large districts are a problem? We're not going to lean on people to do away with them where they don't result in the under-representation of any protected group, defining protected group broadly. But in those cases where they do, as a matter of public policy, we want them to go to non-racially gerrymandered individual districts. Why is that wrong? It's because it's still the trigger when a policy, when a major policy change that deprives voters of their ability to vote for city council members is... See, that's why I asked the first question. As I understand it, let's assume there's 100 people in the city. Before your guy got to vote, he was one of 100s. Now he's one of 25, and there's four. Why does he have less influence than he did before? I don't think it's a question of influence. I know you persuaded another panel that somehow you were right, but I've got trouble figuring out why it was. It's no different from saying the Bakke situation where people can't apply for certain slots because those are removed in a set-aside. He can't vote in those three districts anymore, so he just lost his ability to elect three of the city council members. Oh, he has 25 times more influence with respect to the one member than he did before. I guess you could say the same thing. I think you can make a similar analysis in most cases of racial gerrymandering, where I think there are always pros and cons. Well, you see, my problem is you're saying you're not bringing a racial gerrymandering case. I understand if there's racial gerrymandering. My argument is, look, my voting has been... My ability to do something has been reduced because I've been put into a district improperly, but you're not arguing that. You're arguing that the motivation for the gerrymandering was racial, so I'm trying to It is, and to be clear, I believe I said it is a racial gerrymandering claim. He would not be in the district he's in. But I asked you that question just moments ago. You kind of... You didn't say yes. It was a yes or no answer, but you didn't say yes. You said, well, we're applying principles. So are you making a gerrymandering case, a racial gerrymandering case? Here's the way I would say it. Again. I want to define my terms. No, just yes or no. Can I... I have to define my terms first. If by gerrymandering you mean, if by gerrymandering you mean we are arguing that this line is in the wrong place, we're not bringing that. But we are bringing a racial predominance claim based on the same cases that are traditionally considered the racially gerrymandered cases. And any of those cases ever supported what you just argued here right now? Absolutely. They say when race predominates over all other nonracial factors, you have to satisfy strict  In your client's district, race does not predominate over all factors, does it? This is the exact Bethune Hill point, Your Honor. Section 2A of Bethune Hill categorically, pages 798 to 800, walks through that exact argument and says that it's not good enough. You don't have to show a bizarre shape. You don't have to show failure to comport with traditional... So let's take... There's five districts or four districts in... There are four now. Four districts in Poway. Are any of them drawn racially? All of them are, Your Honor. All of them are. All right. Well, I mean, your argument, I take it, is that in the aggregate, the decision to go to multi-district is a racial determination. Yes. You're not arguing that any of the four districts suffer from racial gerrymandering and evaluate it independently, are you? We have not studied those lines, so I don't know the answer to that. Since you haven't studied it, you can't be arguing it. Okay. So your argument is that the decision to go, not the particular lines that were drawn, your argument is that the decision to go from multi-district to... From single district to multi-district is impermissible. Yes. And here's a great way to... Here's a great way to... That's your argument? Yes. Okay. And here's a good way to think of this, Your Honor. Imagine the reverse. Imagine that Poway had used bi-district systems and then switched to at-large and said, we're not going to do districts. Now everyone is elected citywide. There's no question that a voter in that scenario, that's a very common type of vote dilution claim. People say, you went to at-large to disadvantage minorities who are being too successful in the electoral process. And so there's no question that these broader issues about the system of voting can absolutely give rise to an equal protection claim. See, that's why I'm going back to California's policy. California says, gee, there are a lot of equal protection problems with single, single at-large district elections, at-large elections, lots of multi... And so we want to avoid them. So if you're having those problems, city, we want you to go to the better system, which is multi-district. Tell me again, what's wrong with that? Your Honor, if there is racial predominance, it doesn't matter if it's a benevolent purpose or a malevolent purpose. The affirmative action cases, the Adirondack type case, I mean, even if a state has a perfectly noble altruistic motive, if it's using race as the determinative factor, that has to satisfy strict scrutiny. If they have a prophylactic motive, we've often been sued about single districts, at-large districts. We spend lots of money being sued about them. We almost always lose. So if you've got one of those that looks like it's susceptible to challenge, as Poway may have had, move over to the other legal ones quickly so we don't have that problem. Is that unconstitutional? I think you'd have to look at cases like Riccivi DiStefano for that. In order to use race in that context, I think there has to at least be some strong basis and evidence, which the state would have to show, I think, under potentially—and maybe they could satisfy strict scrutiny in that circumstance. If the state says there's a history of discrimination in these specific ways and we've adopted a narrowly tailored remedy to address those types of things, that may well survive strict scrutiny. Such as, again, the Supreme Court has said Section 2 can require the drawing of majority-minority districts when it's remedying a direct type of harm. But here, racially polarized voting by itself is just a fact. It's not a constitutional vote. Can you help me? Are you making a facial challenge or an as-applied challenge? We're doing both, Your Honor. So we're saying— But didn't the previous panel, since you're relying on them so heavily, say you could only bring an as-applied challenge? Yes. Well, so against the Attorney General, we're challenging the statute facially and saying we're asking the court to enjoin it. But as to POE, we're saying that the CVRA caused the city to redistrict in this racially gerrymandered way, which is as-applied. But you can't attack the statute facially because it's capable—that's why I asked you at the beginning—of perfectly legal applications, in your view, is it not? It is. And Your Honor, and this is why I think it's—we do think we can bring a facial—we do think that in the vast—we think we would satisfy the Solander test, but here's why it actually doesn't matter practically that much. What happened here is what I would consider the benchmark scenario. And so when you look in our brief of all the cities, they get a demand letter and then they have to cave because of this very draconian remedy scheme. And so if the court were to hold that what happened here has to meet strict scrutiny because the CVRA embodies racial classifications, that's going to cover the mine run of cases. So— Right. So you're making an as-applied case. See, I don't see how you can bring a facial challenge once we agree with each other that there are situations in which the statute may be applied constitutionally. Yeah. And I'm happy to rest on our brief on that. I think the as-applied challenge would give us an as-applied challenge that says the CVRA is predominated by race and that's what led to MAP 133, we'd be quite happy with that holding. So how do we determine that the CVRA is predominated by race, given its larger facial neutrality? We look at the CVRA as it applied here, section 14027 refers to a protected class's ability to influence an election. And then the trigger for that is racially polarized voting by itself. And when you look at Schenkman's letter, which is in the record, it's in the, it's mention or complaint and it's in the state's appendix, Schenkman's letter says Latinos have racially polarized voting. And so therefore under the CVRA, you're at large districts. What if his letter is wrong? What if there is no racially polarized voting, but the city of Poway just said, you know, it's a better idea. We won't be sued in the future. We just won't have these problems. Do you then have a claim? I think it's still, I think it's still, I'm sorry, please. My problem is I don't know whether the city of Poway had racially polarized. There's no finding of that. All I know is the city of Poway got a letter from some lawyer and they said, let's avoid the problem. Let's go to multi district. And they had other options. They had other options. They could have, they could have done a variety of things. They could afford it. There's no record of racially polarized voting here. So how do I impute a racially, racial motive to them simply because they said, I don't, I don't want to be involved in a lawsuit. Because it all still flows back, A, it all still flows back to the CVRA because they So anytime, anytime someone makes an allegation based on the CVRA, that's sufficient? Yes. If the city then acts in accordance with that and if the city is trying to remedy what it deems a racial harm and does so in a race based way, that's Let's assume there were no CVRA. And Mr. Shankman sent the same letter and said, I'm going to sue you under the Equal Protection Clause. And they said, we don't think we've done anything wrong, but let's avoid the problem. We'll redistrict. Unconstitutional. I'm not sure. I think it's, that's obviously a harder case, which I know is why you're asking it. But you know, again, I think there's case law on this, which is when can a jurisdiction use race to address prophylactically potential racial harm? And there's a whole doctrine of this. That's why we keep asking you about the racial gerrymandering. They didn't use race to set up the districts. You agree about that? They only have the districts because of race, but the lines were not, but the lines were not drawn. As far as I know, the lines were not drawn. They didn't use race to draw the lines. I don't know. They may have been motivated by, by concerns about being sued about race, but they didn't use race to set up the lines. Correct. I'm not sure how they set up the lines. Yeah. So you can't be contending. I'm not going to do so. So that's so where's the case that says if in order to avoid a possible lawsuit, you set up non-racially gerrymandered districts, you are liable under the Equal Protection Clause? Ricci v. DiStefano, which is about the New Haven firefighters test. The state, I think the city gave a test to firefighters as a job qualification, and then when it didn't like the racial results of how that test came out, they abandoned it. And one of the arguments the city made was we needed to get rid of this to avoid disparate impact. And the court looked at that very closely under the Equal Protection Clause and said, When you're taking race-based action. But there was actual state action. The state gave the test and the city abandoned it. Here what the city did was simply redistrict. Its motivation may have been to avoid a lawsuit, but their actions are much more indirect here, are they not? I just, and I don't want to repeat it again, the law of the case, but if you go back to the briefs from the first case, this is exactly what we were addressing there. If there are no further questions, may I save the remainder? Yes, sir. I have a question. Obviously, the original complaint had many weaknesses and the district court ultimately dismissed it. And you were given an opportunity to amend the complaint, you chose not to do so. Can you tell me why? Well, Your Honor, we don't think that there were weaknesses in the complaint. The district court just said we, so the district court held, the district court granted the Attorney General's motion to dismiss and said we couldn't state an equal protection claim against the Attorney General. And then all we said is, with respect to the city and the interveners, if the district court applied its same reasoning to those parties, we conceded that we would lose on those as well. So we don't, we don't concede, we don't think it was based on weaknesses in the complaint. We just think the district court said, we think incorrectly, that we didn't state an equal protection claim. But do you concede that you are bound by the allegations in the complaint? Of course. Thank you. May it please the court. I'm Joshua Klein on behalf of Attorney General Becerra. I'll be taking 12 minutes for the Attorney General, then Ms. Gomez will take six minutes for the interveners, and Mr. Fenstermacher will take two minutes for the city. And I expect to focus on why there's no equal protection violation here. Ms. Gomez is particularly focused on the remedies under the CVRA in comparisons to the federal statute. The key thing is this, Higginson does not allege that any person in Poway has been treated differently than any other person in Poway on account of either person's race. He therefore fails to state a claim that the events in Poway violated equal protection. And the existence of a constitutional application of the statute in Poway is also fatal to the facial aspect of his claim. The cases reflect an important distinction. On the one hand, strict scrutiny is appropriate where the government treats people of one or another race, either directly or through the use of a proxy for race. That's what all the plaintiff's cases, including Bartlett, including Bethune-Hill, including the racial gerrymandering cases stand for. In contrast, but he doesn't allege anything like that in Poway. And he's alleging that the principle, I think especially in Bartlett, supports his contention here. Right. He's putting a lot of weight on two sentences from a three-justice plurality. But even putting that aside, the problem in Bartlett, the infused with race point, what was infused with race was the question of giving one group of citizens a certain set of rights, the right to vote in District 2, let's say, that another group of citizens did not have, those in District 3. And the reason is because the people were assigned to districts according to race or racial proxies to achieve a racial target. Right. That was the, that's what's happening in the influence and coalition district cases. In contrast, there's no similar allegation here. And there's an allegation that goes like this, and let's assume the CVRA only talked about racial, racial polarization. So leave all, leave off for a second, all the non-racial ways it might be applied. And the state of California sued Poway and said, you need to abandon your single district, your at-large system and go to districts because we think you're racially polarized. And Poway did it in response to that lawsuit. Assuming there was no equal protection violation being remedied for the moment, because even he concedes that if there's an equal protection problem, you can remedy it. Assuming there's no equal protection violation being remedied, would, would that system violate the constitution? On those facts, no. And let me explain why. Because where the government recognizes a racial disparity and a vote dilution, and when racially polarized voting rises to the level of vote dilution, that is to say it results in a persistent inability of the numerical minority to fully participate in the political process. That is a racial disparity. Well, but your, your, your friend would say you can do that when the equal protection violation is established as a remedy, but you can't on the basis of race go out and force redistricting simply on the fear that this might be occurring. So parents involved in the Texas Housing Department case made clear that the government can respond to a racial disparity through race neutral means, and that does not get strict scrutiny. Parents involved is clear on that, and Texas Housing Department is, if anything, more clear on that. And the key is, has the government used a race neutral means in that instance? And that's all he's alleging in Poway. And let me say, in answer to your honors, several of the questions, there's a reason why the plaintiff hasn't alleged that districts were drawn to make Latinos as a, have additional political power in one district versus another, which is that they couldn't ethically allege that, I suspect, because the charts that are attached to their preliminary injunction motion showing where, showing the constitution of those districts, who, who comprises those the districts ended up being roughly the same racial percentages as the city as a whole. Now let me talk about Bethune Hill and Ricci, because he did bring those up. In Bethune Hill, again, we agree, you don't need funny looking lines in order to show that people are being given rights to vote in one district versus another on account of race. Direct evidence can do that. But the key point is, has someone been given a right, the right to vote in district one versus two, and someone of another race given a different set of rights because of the people's race? Same thing as in Johnson. And in Ricci versus DiStefano, I think that's a straight up disparate treatment case, because that's a case where the city of New Haven had something like seven white applicants who were entitled to automatic promotion under the test results, and maybe 12 for Lieutenant seven and maybe 12 for Sergeant, and canceled the test to specifically take away those automatic promotion rights to then come up with a new system to redistribute them. That was specifically treating people differently. So it's part of your argument, and I'm, I'm, I'm not sure what, to what extent we're bound by the prior panel, but you seem to be arguing that Mr. Higginson wasn't heard at all. And, and I, I'm not unsympathetic to that argument, but hasn't the prior panel suggested that he does have standing? We're not challenging the standing, at least as to where the panel actually decided it, which was to the as-applied challenge in Poway. But here's the distinction. Suppose the police break down my door and go into my house in the middle of the night. I'm going to have standing for that Fourth Amendment violation. I have an injury for standing purposes, but I have not, but it, I won't necessarily have suffered the Fourth, the Fourth Amendment violation, right? I have to also prove no warrant, no exception to the warrant requirement. Well, here, what he has to show in addition to the injury of having fewer races to vote in, he has to show that he's been treated differently than another person on the basis of race. And he can't show that even in Poway, let alone statewide, which is fatal to his, to his facial claim. Now, it seems like, I mean, his core argument, Mr. Harris, is that because liability under the CVRA is premised on the existence of racially polarized voting, the statute makes race the predominant factor in drawing electoral districts and that that's unconstitutional because it fails to survive strict scrutiny. So what's your direct response to that? The point is what it doesn't do is treat people unequally. And let me give another example. I'm very worried about running into my colleague's time. That's the problem with splitting time. We want to hear from, when we want to hear from you, we'll ask you questions. Okay. I'm happy to hear you asking questions, answering questions. Let me give an example for why merely trying to address race in a race neutral way is not unconstitutional. In the Fair Sentencing Act, Congress recognized that the sentencing statutes treatment of crack versus powder cocaine was resulting in a racial disparity, right? Dorsey and Kimbrough say we noticed the racial disparity. They addressed that through a race neutral means, which was they changed the sentences for everyone. Not unconstitutional. If a state recognizes that Latino and Asian American voting is depressed because, and therefore voting power diluted because of language difficulties, it's not unconstitutional to let every voter take a person of their choice into the voting booth for translation assistance. There's no equal protection violation because, and it's not even in the hard questions category when no one's being treated unequally, either directly or through a proxy for race. If there are no further questions for me, I'd like to allow my colleagues to speak. Good morning, your honors, and may it please the court. My name is Julia Gomez for Intervenor Appellees, California LULAC, Jacqueline Contreras, Javier Flores, and Judy Keith. I want to premise my discussion about the relationship between Section 2 and the CVRA by noting that Intervenor Appellees, of course, agree with the state that because the appellant has not alleged he's been treated differently because of his race, his equal protection claims and the analysis should really end there. However, appellant does insist that because CVRA does not perfectly mirror Section 2, that that's somehow unconstitutional and that's incorrect. California derives its authority to create statutes that protect voting rights, not from the Federal Voting Rights Act, but from independent statutory law, such as the U.S. Constitution and the California Constitution. The differences between the two statutes reflect not a constitutional defect with the CVRA, but a different approaches to vote dilution. One way in which the two statutes differ is that the CVRA provides for a broader cause of action for vote dilution, whereas Section 2 is silent when it comes to certain types of vote dilution. So, for example, the CVRA addresses vote dilution when it impairs the ability to influence the outcome of an election, as well as when it impairs the ability to elect. Whereas in LULAC, the court held, reading Section 2, that because Section 2 is silent as to influence dilution claims, it does not mandate the creation of influence districts. A second difference between the two statutes, it's their approaches to compactness. The California legislature recognized that there are instances in which a minority group might still be suffering vote dilution. And for this reason, the CVRA does not require a showing of compactness at the liability stage. But of course, a judge or a jurisdiction may consider compactness when fashioning a remedy once a violation has been shown. The Supreme Court, on the other hand, has interpreted Section 2 to require a showing of compactness at the liability stage. And the Supreme Court has done this by reading Section 2. So when the court first addressed, interpreted Section 2 as amended in Jingles, the court had before it only a claim of an impairment of the ability to elect. And so the court set out the three jingles prong and says, if you're arguing that you can't elect, then you need to be able to show that if we give you a remedy, you'd actually be able to elect someone. But the Supreme Court noted in footnote 12 that it was not considering whether or not one Section 2 provides a vote dilution, a remedy for influence dilution claims. And if it does provide a remedy, what that test would look like. And so this really highlights the fact that when the court instituted the compactness requirement in Jingles, it did not view prong one as a constitutional necessity because it left open the possibility that in the future there may be a test for influence dilution claims. Has the court suggested that there are constitutional limits to the remedies that can be ordered under Section 2? I don't think the court suggested it. Appellant does cite to a couple of quotes from Lulac and I think Bartlett, where the court expresses a concern that requiring either influence or crossover districts is going to infuse race into every redistricting. But those are in the context of the remedy, the remedy of single member districts that's moving voters within or without within or without a district. The court has never expressed a concern with an analysis of racially polarized voting in those two cases when it expressed this concern. Assuming we find merit in the appellate's argument, how would that affect other areas of the law? If we were to find it meritorious? Well, I mean, racially polarized voting, he makes much of the fact that this is the quote unquote racial racial classification here. But what racially polarized voting is really telling you is what are the voting behaviors on the ground? So it's acknowledging it's telling a plaintiff, prove first that there is a race based harm and then we'll give you a remedy. And so if we were to accept this argument, that evidence of a race based harm isn't self the racial classification or the differential treatment, then it would really affect all civil rights statutes. So let's assume there were a showing of racially polarized voting. Take it then you could, as a remedy, go to a different district system legally, correct, in your view? Yes, if you were able to. What do we do with this case where there's no showing of racially polarized voting, where the city on its own undertakes to redistrict because it's worried about a lawsuit about race? Well, I mean, again, appellate would have to allege that he's been treated differently because of his race and he hasn't. He instead alleges that the word racist in the statute that resulted in the demand letter here, but he doesn't allege anything about how he was treated differently because of his race. We can't take that broader view that he's asking us to take. Well, I mean, not in particular, not in this case, because again, he's not alleging he was treated differently or even that racially polarized voting was an analysis was conducted. But even in another case, no, I don't think you'd be able to. There's no case law that says that evidence of a race based harm, what you need to prove to even get a remedy is what causes the racial classification. Well, I guess what we're worrying through is the Supreme Court's references to infusion and pervasiveness and things that are I don't know why they use those words, but they did. So really, in this case, the reason for the redistricting was was a concern about racial polarization, was it not? Well, yes. But again, going back to those cases where the court was determining whether in LULAC, for example, influence districts were required or in Bartlett, where the court was considering where the crossover districts were required. Even in those cases, the court first analyzed the language of the statute. And then on top of that said, and on top of that, if we were to require our all jurisdictions every decade to when they're considering redistricting to make sure that they adopt influence districts just in case they violate section two, they are going to have a lot more shot challenges, something that appellants not bringing here. And that's really the context. The court has never I mean, the court set out the racially polarized voting, but voting test and jingles the court and Congress in section two. And so to say that that is what makes the CVRA unconstitutional, it's really turning to precarious burdens on its head. So going back to the compactness requirement, I just want to quickly say that the reason that the CVRA does not require a showing of compactness at the liability stage is, again, because the California recognizes that there are instances where dilution may occur even outside those situations. And just quickly to wrap up again, we just really want to emphasize that the fact that California differs from federal the Federal Voting Rights Act, it's not a reason to find the the not a reason to find the CVRA unconstitutional. Thank you. And we respectfully request that the court affirm the opinion of the lower court. Good morning, your honors, may it please the court. I'm Alan Fenstermacher, the city attorney for the city of Poway. And as the court as your honors are no doubt aware, the city has taken a neutral position on the merits throughout this action. When's when's your next city election? November 2020. A year from now. Correct, your honor. And in terms of planning, if you would have to change your system. Right. And when would you need to know? What we were requesting is May 2020. And the reason for that is we have a number of external deadlines we don't have control over. There's state election codes. If you're keeping the system, then you're then you're you're fine. Right. Right. Yeah. A later order keeping the system would not would not necessarily be a problem. But that being said, there is some uncertainty with this case pending. So in addition to the mandatory deadlines, registrar and elections code deadlines, we do have to consider the fact that the electorate and potential candidates, you know, deserve to know what seats are on the ballot and who's eligible to run. You know, that's a deliberative process that we'd like to give our citizens a chance to participate in. So, again. So right now you're set to do a district based election. That's right. So we are back in 2016. I'm sorry, 2018 was the first implementation of the districts. We had two districts run. The final two will be run in 2020 and then will be complete. So, again, I said he would like to express its sincere gratitude to this court so far expedited process and typically would never ask for a certain time. But May 2020 is what we're requesting. And again, the city has tried to avoid spending taxpayer resources, debating the constitutionality of state law over which it has no control and simply must comply with. And to that point, the city really wants to emphasize the fact that there's been no defendants, that the city took any specific unlawful or bad act. And instead, actually, everyone here agrees that the city has complied with state law as written, as and as we're required to do as a general law city in Oregon and the state. And again, we will continue to comply with the law. And with that, I'd be happy to answer any questions the panel may have that would help you decide this matter. Very much. Thank you. To just two quick points in rebuttal, first, my friend said that there can't be a racial discrimination of the Equal Protection Clause unless people are treated, quote, unequally. Powers versus Ohio, quote, It is axiomatic that racial classifications do not become legitimate on the assumptions that all persons suffer them and what's the racial classification here? The racial classification is a facial race based trigger. Powers dealt with somebody who is classified differently, given given different voting rights or different rights than than his co-citizens because of race. Your client's not classified differently because of race, is he? He was subject to a race based classification. I understand that large argument, but but Powers is a very different case. And maybe citizens and certainly citizens of other races in the city would also have the same type of. Do you really contend that your client was subjected to a race based classification? Yes, he's he is in a district for one reason and one reason only, which is that people have an allegation in the complaint. That he I don't have it in front of me, but it's throughout our complaint that he was subject to a race based classification under cases like what was that classification? Voter in District two. Is he is yet he is in a district that would not exist, but for a racially predominated process, CNN said that argument, but I have a hard time figuring out how your client was subject to a race based classification. He was classified as a voter in District two because he happens to reside in District two. And I think the and I think the arguments my friends and the district court have made, contrary to that, seem to suggest that if if people of different races receive the same type of injury, that that can't state a claim. And we think that's just not consistent with the way the Supreme Court has looked at these issues. And I see I'm out of time. Thank you very much. Thank you all for your arguments here today. The case of Higginson versus Javier Becerra and California League of United Latin American Citizens is submitted.
judges: Murguia, Hurwitz, Guirola